# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

SINNA ABLULIMIR, INDIVIDUALLY,
and d/b/a RENT 4 LESS CAR RENTAL,

*Plaintiff*,

vs.

Case No. 11-4014-EFM

U-HAUL CO. OF KANSAS, INC. AND U-HAUL INTERNATIONAL, INC.,

*Defendants.*

## MEMORANDUM AND ORDER

This breach of contract case arises from Defendant U-Haul Co. of Kansas, Inc.'s alleged termination of a contract with Plaintiff Ablulimir. Before the Court is Defendant U-Haul Co. of Kansas, Inc.'s Motion to Dismiss, or in the alternative, Motion for More Definite Statement (Doc. 7).[1] For the following reasons, Defendant U-Haul Co. of Kansas, Inc.'s Motion to Dismiss is granted.[2]

### I. Factual and Procedural Background[3]

Plaintiff Ablulimir individually and as Rent 4 Less Car Rental ("Ablulimir') filed this

---

[1] Defendant U-Haul International, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 9) is also granted in a separate order.

[2] Plaintiff has not filed a response. Pursuant to D. Kan. Rule 7.4, the Court will consider and decide the motion as uncontested. Nevertheless, the Court will still examine the allegations in Plaintiff's complaint to determine whether she has stated a claim for which relief can be granted. *See Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003).

[3] For the purposes of this Order, the Court assumes the truth of these facts.

complaint in Riley County, Kansas. Defendants U-Haul Co. of Kansas, Inc. and U-Haul International, Inc. ("Defendants") filed a Notice of Removal of this complaint.[4] In the Complaint, Ablulimir alleges that she began a contractual relationship with the Defendants as a U-Haul Dealer on or about 2003, and that the relationship had continued uninterrupted. She alleges that Defendants routinely extended and renewed these contracts and that acting in reliance of this relationship, she purchased land and moved her dealership in Manhattan, Kansas. Ablulimir alleges that through their actions and representations since 2003, Defendants assured her that the dealership agreement would continue. She also alleges that she enjoyed a good business, and had established a reputation for excellent service, being named a "Top 100 Dealer" in May 2008, June 2009, and July 2009. This award was given to less than 2% of U-Haul Dealers.

Ablulimir further alleges that Defendants informed her that her U-Haul dealership agreement was being terminated on February 21, 2010. She asserts they gave no advanced written warning of any deficiencies nor provided Plaintiff any opportunity to correct any deficiencies. She alleges that Defendants terminated her contract because she is a woman of Middle-Eastern descent, while they continued a dealership agreement with another U-Haul dealership in Manhattan, Kansas because it was owned by a white male and staffed with white male employees, even though she alleges those employees were dishonest. Ablulimir also alleges that one of Defendants' representatives told Ablulimir the Defendants were going to run her out of business.

Ablulimir alleges that in Defendants' alleged attempts to run Ablulimir out of business, Defendants took a number of steps. She claims that these steps included one of Defendants'

---

[4]Doc. 1. In her pleadings, Ablulimir never specifies which Defendant allegedly committed the act. Accordingly, the Court lists "Defendants" when Ablulimir says "Defendants," or "one Defendant" when she says "Defendant."

representatives planting bits of trash in Ablulimir's U-Haul vehicles and then telling Ablulimir and her employees that the unclean condition of the vehicles was grounds for termination. She claims one of Defendants' representatives further urged Ablulimir's employees to quit, promising employment at a new U-Haul store. In addition, she claims one Defendant allegedly conspired with another individual to place a new U-Haul business within blocks of Ablulimir's dealership before closing her dealership, even though her franchise/dealership agreement placed no restrictions on either the number of dealerships or distance between those dealerships in a geographic area. She alleges that because the Defendants assigned a fictitious phone number of (111)111-1111 to the new dealership, a conspiracy to open a new dealership was in place before terminating her contract. Ablulimir further alleges that Defendant's employee, Chris Smith, entered her property without permission to vandalize her sign, and that damages to the premises and the cost of replacing and repairing the sign is $5,000.

Based on these allegations, Ablulimir brings claims of breach of contract; fraud and slander; tortious interference with contract; civil rights violations; antitrust violations; and damage to property and trespass. Defendant U-Haul Co. of Kansas, Inc. ("U-Haul of Kansas") filed a Motion to Dismiss for Failure to State a Claim, or in the alternative, Motion for More Definite Statement.

## II. Motion to Dismiss Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[5] "[T]he mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable

---

[5]*Ashcroft v. Iqbal*, - - - U.S. - - -, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twonbly*, 550 U.S. 544, 570 (2007)).

likelihood of mustering factual support for these claims."[6] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[7]

In determining whether a claim is facially plausible, the court must draw on its judicial experience and common sense.[8] All well pleaded facts in the complaint are assumed to be true and are viewed in the light most favorable to the plaintiff.[9] Allegations that merely state legal conclusions, however, need not be accepted as true.[10]

### III. Analysis

**A. Breach of Contract**

Ablulimir alleges that Defendants breached a contract by violating the implied duty of good faith and fair dealing. Kansas courts imply a duty of good faith and fair dealing in every contract.[11] "[I]n order to prevail on an implied duty of good faith and fair dealing theory . . . plaintiffs must (1) plead a cause of action for breach of contract . . . and (2) point to a term of the contract which the defendant allegedly violated by failing to abide by the good faith spirit of that term."[12] This is because the "implied covenant is derivative in nature in that it does not create or supply new contract

---

[6]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[7]*Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

[8]*Iqbal*, 129 S.Ct. at 1950.

[9]*See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[10]*See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[11]*Daniels v. Army Nat'l Bank*, 249 Kan. 654, 658, 822 P.2d 39, 43 (1991).

[12]*Terra Venture, Inc. v. JDN Real Estate Overland Park, L.P.*, 443 F.3d 1240, 1244 (10th Cir. 2006) (quoting *Wayman v. Amoco Oil Co.*, 923 F. Supp. 1322, 1359 (D. Kan. 1996)).

terms, but it grows out of existing ones."[13] Thus, where the minds of the parties have not met, essential terms of the contract cannot be supplied by the implied duty of good faith and fair dealing.[14]

Here, Ablulimir alleges that there was a breach of contract, but she fails to point to any term within the contract and fails to allege how the contract was breached. She alleges that Defendants routinely extended and renewed her franchise/dealership contracts, and that by their actions and representations for the past seven years, Defendant assured her that the dealership agreement would be continued. This is the entirety of her allegations. Ablulimir neither submitted a copy of the contract, nor alleged nor pointed to any term within the contract that was allegedly violated. The Court will not provide a contractual term that Plaintiff has failed to provide. Because Ablulimir fails to allege how the contract was breached, she cannot allege that Defendants violated the implied duty of good faith and fair dealing, and this count is accordingly dismissed.

**B. Fraud and Slander**

In Kansas, the essential elements required to sustain an action for fraud are:

1. That false (or untrue) representations were made as a statement of existing and material fact. 2. That the representations were known to be false (or untrue) by the party making them, or were recklessly made without knowledge concerning them. 3. That the representations were intentionally made for the purpose of inducing another party to act upon them. 4. That the other party reasonably relied and acted upon the representations made. 5. That the other party sustained damage by relying upon them. A representation is material when it relates to some matter that is so substantial as to influence the party to whom it was made.[15]

---

[13]*Id.* (quoting *Kindergartners Count, Inc. v. DeMoulin*, 249 F. Supp. 2d 1233, 1243 (D. Kan. 2003)).

[14]*Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1179 (D. Kan. 1990) (citing *Bonanza, Inc. v. McLean*, 242 Kan. 209, 222, 747 P.2d 792, 801 (1987)).

[15]*Newcastle Homes, LLC v. Thye*, 44 Kan. App. 2d 774, 788–89, 241 P.3d 988, 998 (2010) (quoting Pattern Instructions for Kansas, PIK Civ. 4th 127.40).

Furthermore, despite the liberality of notice pleading, fraud must be pleaded with particularity.[16] K.S.A. § 60-209(b) also requires fraud to be plead with particularity, and it is strictly enforced.[17] To plead a fraud claim, the plaintiff must assert "the time, place, and content of the false representation; the identity of the person making the representation; and the harm caused by the plaintiff's reliance on the false representation."[18] Stated differently, the plaintiff must plead the who, what, where, and when of the alleged fraud.[19]

Here, the extent of Ablulimir's fraud allegations are that one of Defendants' representatives planted bits of trash in her U-Haul vehicles and then told Ablulimir and her employees that the vehicles were in an unclean condition, and that this was grounds for termination of the dealership agreement. This meets, at most, the first two elements of fraud, namely, that false representations were made, and that the person making the representations knew them to be false. The allegations do not assert the time of the representation or the identity of the person making the representation. Nor do these allegations indicate any intention of inducing someone to act upon the statements or another person relying upon the statements. Furthermore, Ablulimir did not allege any harm based on her reliance on misrepresentation. Accordingly, the count of fraud is dismissed.

---

[16]Fed. R. Civ. P. 9(b). The language of Rule 9(b) and K.S.A. § 60-209(b) is identical.

[17]*Newcastle Homes*, 44 Kan.App.2d at 788, 241 P.3d at 998 (citing *Palmer v. Brown*, 242 Kan. 893, 901, 752 P.2d 685 (1988)).

[18]*Arena v. Wal-Mart Stores, Inc.*, 221 F.R.D. 569, 571 (D. Kan. 2004) (citing *Ramada Franchise Sys., Inc. v. Tresprop, Ltd.*, 188 F.R.D. 610, 612 (D. Kan. 1999)).

[19]*Id.* (quoting *Nal II, Ltd. v. Tonkin*, 705 F. Supp. 522, 525–26 (D. Kan. 1989)).

Defamation includes both libel and slander.[20] "The elements of defamation include false and defamatory words, communicated to a third person, which results in harm to the reputation of the person defamed."[21] In Kansas, "damage to one's reputation is the essence and gravamen of an action for defamation. Unless injury to reputation is shown, plaintiff has not established a valid claim for defamation, by either libel or slander, under our law."[22]

As noted above, Ablulimir alleges that one of Defendants' representatives wrongfully told her and her employees that her vehicles were unclean. While Ablulimir makes conclusory allegations that there was damage to her reputation, nothing in Ablulimir's pleadings can be construed to allege that her reputation in the community was damaged. As such, the count of slander is dismissed.

## C. Tortious Interference with Existing Contractual Relations

"Tortious interference with an existing contract requires: (1) a contract; (2) knowledge of the contract by the wrongdoer; (3) intentional procurement of a breach of contract; (4) absence of justification; and (5) damages resulting from the wrongful interference."[23] The claim requires a valid and enforceable contract between the plaintiff and a third party.[24] Thus, an essential element of the claim is that the contract must be one to which the defendant is an outsider.[25] Moreover, "Kansas does not recognize a claim for tortious interference with contract against an agent or

---

[20]*Wright v. Bachmurski*, 29 Kan. App. 2d 595, 600, 29 P.3d 979, 984 (2001).

[21]*Droge v. Rempel*, 39 Kan. App. 2d 455, 459, 180 P.3d 1094, 1097 (2008).

[22]*Gobin v. Globe Publ'g Co.*, 232 Kan. 1, 6, 649 P.2d 1239, 1243 (1982).

[23]*Byers v. Snyder*, 44 Kan. App. 2d 380, 394, 237 P.3d 1258, 1269 (2010).

[24]*Macke Laundry Serv. Ltd. P'ship v. Mission Assocs., Ltd.*, 19 Kan. App. 2d 553, 561, 873 P.2d 219, 225 (1994).

[25]*Battenfeld of Am. Holding, Inc. v. Baird, Kurtz & Dobson*, 1999 WL 232915, at *4 (D. Kan. 1999).

employee of one of the contracting parties, unless there is some suggestion that the agent or employee was acting in his or her individual capacity or for his or her individual advantage."[26]

Ablulimir alleges that one of Defendants' representatives urged her employees to quit their jobs, promising employment at the new dealership. It is unclear whether she is alleging that the Defendants' representative tortiously interfered with the contract she had with U-Haul of Kansas, or whether she is alleging the Defendants' representative interfered with an employment contract between Ablulimir and her employees. To the extent that her claim might be construed as interference with an employment contract, Ablulimir has not alleged that any of her employees quit her employment. As such, she has failed to plead any damages resulting from the interference, and the claim is dismissed.

To the extent that the claim might be construed as interference in the contract Ablulimir allegedly had with U-Haul of Kansas, she never alleges that Defendants' representatives were acting in anything other than their official capacities on behalf of the Defendants, so the act of the Defendants' representative must be regarded as an act of the Defendant. Essentially, then, she is alleging that Defendants' representatives tortiously interfered with Defendants' own contract. Because a party cannot tortiously interfere with its own contract, Ablulimir has failed to properly plead a claim for tortious interference with existing contractual relations, and the count is dismissed.

**D. Violation of Civil Rights**

Under Title VII, a plaintiff must obtain a right to sue letter from the EEOC as a prerequisite to suit.[27] A plaintiff's exhaustion of administrative remedies is a jurisdictional prerequisite to suit

---

[26]*Id.* (citing *Clevenger v. Catholic Soc. Serv. of the Archdiocese of Kansas City*, 21 Kan. App. 2d 521, 525–26, 901 P.2d 529, 532–33 (1995)).

[27]*Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1310 (10th Cir. 2005)

under Title VII.[28]  If the court determines a plaintiff has not exhausted her administrative remedies, the court should dismiss those claims for lack of jurisdiction.[29]  In addition, once a federal court determines it lacks subject matter jurisdiction, the court is powerless to continue.[30]  "To ensure its Article III power is exercised properly, a federal court must, 'in every case and at every stage of the proceeding, satisfy itself as to its own jurisdiction.'"[31]  Thus, a court may satisfy itself that it has subject matter jurisdiction *sua sponte*.[32]

Ablulimir alleges that Defendant's decision to terminate the dealership agreement is based upon considerations prohibited by Title VII of the 1964 Civil Rights Act.  She then asks the Court to hold these claims in abeyance until after the respective commission investigates and she exhausts her administrative remedies.  Yet, without a right to sue letter, or Plaintiff having exhausted her administrative remedies, this Court lacks jurisdiction over a Title VII claim, and is powerless to hold the claim in abeyance.  Accordingly, the Title VII claim is dismissed.

**E. Antitrust Violations**

It is unclear whether Ablulimir is alleging violations of federal or state antitrust laws, because she does not reference any law or statutory provisions.  To prevail with a restraint of trade claim under § 1 of the Sherman Act, the plaintiff must prove that the defendant participated in an

---

[28]*Id.* at 1317.

[29]*Id.* at 1317–18.

[30]*Cunningham v. BHP Petroleum Gr. Brit. PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005).

[31]*Mires v. United States,* 466 F.3d 1208, 1211 (10th Cir. 2006) (quoting *Citizens Concerned for Separation of Church & State v. City & Cnty. of Denver,* 628 F.2d 1289, 1301 (10th Cir. 1980)).

[32]*Image Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006).

agreement that unreasonably restrained trade in the relevant market.[33] A monopoly claim under § 2 of the Sherman Act has two elements: "1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power."[34] Under either section, defining the relevant product and geographic markets is a threshold requirement, because it provides the framework for the court to measure economic power.[35] Thus, "[f]ailure to allege a legally sufficient market is cause for dismissal of the claim."[36]

A relevant market is defined by "the interchangeability of use or the cross-elasticity of demand between the product [in question] and substitutes for it."[37] A plaintiff must define the market in terms of all products that are reasonably interchangeable, or explain the rationale for a narrower market definition.[38] It should be noted that antitrust laws are enacted for the protection of competition, not competitors.[39] Moreover, the natural monopoly a company has over its own product does not violate the Sherman Act.[40]

Here, the allegations in Ablulimir's complaint fail to define the relevant market in terms of interchangeability and cross-elasticity of demand. She pleads that there was a conspiracy to restrict the number of dealerships in a geographic area. Ablulimir alleges that invoices with a fictitious

---

[33] *Adidas Am., Inc. v. Nat'l Collegiate Athletic Ass'n*, 64 F. Supp. 2d 1097, 1101 (D. Kan.1999).

[34] *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1117–18 (10th Cir. 2008) (quoting *United States v. Grinnell Corp.,* 384 U.S. 563, 570 (1966)).

[35] *Id.* at 1118 (quoting *Spectrofuge Corp. v. Beckman Instruments, Inc.*, 575 F.2d 256, 276 (5th Cir.1978)).

[36] *Id.*

[37] *Adidas*, 64 F. Supp. 2d at 1102 (quoting *Brown Shoe Co. v. United States,* 370 U.S. 294, 325 (1962)).

[38] *Id.*

[39] *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488 (1977).

[40] *TV Commc'n Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1025 (10th Cir. 1992).

phone number show Defendants' intent to open a new U-Haul within several blocks of her dealership even before the Defendants terminated their agreement with her. She further alleges that because the franchise/dealership agreement places no restrictions on the number of dealerships within a geographic area, her dealership should have remained open and been allowed to compete with the dealership Defendants granted to another individual.

Outside of Ablulimir invoking the words "geographic area," the Court finds no allegations of a relevant market. A plaintiff must cite more than just the relevant language to state a claim for relief, and mere conclusory allegations are not sufficient.[41] As such, the federal anti-trust claim is dismissed.

K.S.A. § 50-101 states:

A trust is a combination . . . for either, any or all of the following purposes. *First*. To create or carry out restrictions in trade or commerce, or aids to commerce, or to carry out restrictions in the full and free pursuit of any business authorized or permitted by the laws of this state. *Second*. To increase or reduce the price of merchandise . . . *Third*. To prevent competition in the . . . transportation, sale or purchase of merchandise . . . or to prevent competition in aids to commerce.

K.S.A. § 50-112 states that "arrangements . . . which tend to prevent full and free competition . . . or which tend to advance, reduce, or control the price or the cost to the producer or to the consumer . . . are hereby declared to be against public policy, unlawful and void."

In discussing the Kansas restraint of trade act, the Kansas Supreme Court noted that no hard and fast rule could be laid down, but that the question is never whether there is a restraint of trade, but whether the restraint is reasonable and whether or not the restraint contravenes the public welfare.[42] Because the restraint of trade act concerns itself with the public welfare, it was designed

---

[41]*Id.* at 1024.

[42]*Heckard v. Park,* 164 Kan. 216, 223–24, 188 P.2d 926, 931 (1948).

to protect the competitive process, not competitors.

Ablulimir alleges that Defendants conspired to increase prices offered to the public. She asserts Defendants did this by terminating her franchise agreement, and granting a contract to another individual. The Court is unpersuaded that replacing one dealership with another dealership plausibly demonstrates an intent to increase prices. Furthermore, because the franchise/dealership agreement places no restrictions on the number of dealerships within a geographic area, it acts to encourage competition between dealerships. Accordingly, this antitrust count, whether brought on state or federal grounds, is dismissed.

**F. Damage to Property and Trespass**

In Kansas, "[a]n employer is liable for the tortious acts of his employee only under special circumstances."[43] These special circumstances include, among others, when the "employee is performing work for the employer . . . [or] when the employer negligently retains a known incompetent or unfit employee."[44] The employee is presumed to be acting within the scope of his authority "when he is performing services for which he has been employed or when he is doing anything which is reasonably incidental to his employment."[45] Alternatively, to be liable for negligent hiring of an employee, "the employer must, by virtue of knowledge of his employee's particular quality or propensity, have reason to believe that an undue risk of harm exists to others as a result of the continued employment of that employee; and the harm which results must be within

---

[43]*Girard v. Trade Prof'ls, Inc.*, 50 F. Supp. 2d 1050, 1052 (D. Kan. 1999) (quoting *Thies v. Cooper*, 243 Kan. 149, 150, 753 P.2d 1280 (1988)).

[44]*Id.*

[45]*Id.* (quoting *Hollinger v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 2 Kan. App. 2d 302, 311, 578 P.2d 1121, 1130 (1978)).

the risk created by the known propensity."[46]

Ablulimir alleges that Defendant's employee, Chris Smith, trespassed upon her property and vandalized her sign. She has failed, however, to allege either that he was acting in furtherance of his employer's business, or that his employer should have had knowledge of any particular quality or propensity. As such, she has failed to state a claim under either a theory of *respondeat superior*, or negligent hiring of an employee. Accordingly, the Court dismisses this claim.

**IT IS ACCORDINGLY ORDERED** that Defendant U-Haul Co. of Kansas, Inc.'s Motion to Dismiss (Doc. 7) is **GRANTED**.

**IT IS SO ORDERED.**

Dated this 13th day of June, 2011.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[46]*Stallings v. Werner Enters., Inc.*, 598 F. Supp. 2d 1203, 1212 (D. Kan. 2009) (quoting *Thomas v. Cnty. Com'rs. Of Shawnee Cnty.,* 40 Kan. App. 2d 946, 962, 198 P.3d 182, 193 (2008)).